Howard Todd **HORBERG** and Kimberly Horberg, his wife, Plaintiffs,

v.

**KERZNER INTERNATIONAL HOTELS LIMITED**, a Bahamian company; and Kerzner International Bahamas Limited, a Bahamian company, Defendants.

Case No. 07–20250–CIV.

United States District Court, S.D. Florida.

Aug. 6, 2007.

Jeannete C. Lewis, Robert L. Parks, The Haggard Law Firm, P.A., Coral Gables, FL, for Plaintiffs.

Bruce Scott Liebman, Michelle Ioanna Bougdanos, Akerman Senterfitt & Eidson, Fort Lauderdale, FL, for Defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

URSULA UNGARO, District Judge.

This case is before the court on Defendants' Motion to Dismiss, filed April 20, 2007. (D.E. 9.) Plaintiffs filed their Response on June 6, 2007, (D.E. 13) to which Defendants replied on June 18, 2007. (D.E. 20.) The matter is ripe for disposition.

THE COURT has considered the motions and the pertinent portions of the record, and is otherwise fully advised in the premises.

### BACKGROUND

This is an action for damages arising out of an alleged jet ski accident occurring in the waters off of Paradise Island, The Bahamas. Unless otherwise indicated, the

Court states the facts as alleged in Plaintiffs' Complaint. Plaintiffs at all material times are and were United States citizens residing in Highland Park, Illinois. (Compl. ¶ 2.) Defendant Kerzner International Hotels Limited[1] ("Kerzner") and Defendant Kerzner International Bahamas Limited[2] ("Kerzner Bahamas") are Bahamian companies. (Compl. ¶ 4.) In March 2005, Plaintiffs were guests at the Atlantis Hotel, owned and operated by Kerzner. (Compl. ¶ 3.) On March 26, 2005, Plaintiff Howard Horberg ("Horberg") rented a jet ski from a person operating a jet ski business on the beach owned and under the sole control of the Atlantis Hotel.[3] (Compl. ¶ 3.) Plaintiffs allege that at "that time and place, another jet ski operated by an unidentified driver struck the jet ski operated by Horberg causing him serious bodily injuries." (Compl. ¶ 3.) Plaintiffs' Complaint consists of two counts, including a claim for negligence (Count I) and a claim for vicarious liability (Count II). Plaintiffs seek damages for Horberg's pain and suffering, mental anguish, emotional distress, permanent injury, loss of wages, incurred medical expenses, and loss of capacity for the enjoyment of life resulting from Defendants' alleged negligence. (Compl. ¶ 30.) Plaintiffs also seek damages for the loss of service, society, companionship, and consortium that Plaintiff Kimberly Horberg has suffered as a result of Defendants' alleged negligence. (Compl. ¶ 30.) It is Plaintiffs' position that "Defendants failed to properly supervise and monitor the use of jet skis by their guests on the waters off of the Atlantis Hotel." (Mot. to Dismiss at 2.)

On March 24, 2005, when Horberg checked into the Atlantis Hotel, Paradise Island (Aff. of Giselle Pyfrom ("Pyfrom Aff."), Defs.' Ex. C.), Horberg executed two guest registration cards containing the following mandatory forum selection clauses:

> I agree that any claims I may have against the Resort Parties resulting from any events occurring in The Bahamas shall be governed and construed in accordance with the laws of the Commonwealth of The Bahamas, and further, irrevocably agree to the Supreme Court of The Bahamas as the exclusive venue for any such proceedings whatsoever.

(Pyfrom Aff. ¶ 7, Defs.' Ex. C.) Defendants' Senior Vice President, Giselle Pyfrom, explains that Defendants typically follow a check-in procedure pursuant to which the guest is checked in at the front desk and at the time of check-in is presented with the registration card or form, and asked to read it, and confirm that the departure date and other information is correct, and sign it. (Dep. of Giselle Pyfrom, May 22, 2007 ("Pyfrom Dep.") 11:4–10.) According to Pyfrom, at the time Horberg signed the two guest registration cards at issue in this action, there was no procedure in effect pursuant to which the desk clerk would explain to the guest that

1. Formerly known as Sun International Hotels Limited

2. Formerly known as Sun International Bahamas Limited

3. Defendants have provided evidence that neither Defendants nor any business owned, operated and/or controlled by Defendants or their affiliates rented the jet ski at issue to "Mr. Horberg." (Pyfrom Aff. ¶ 12 & Ex. C.) In particular, Defendants have provided the Court with a copy of the guest registration card Horberg signed upon arrival at the Atlantis, which states: **"I UNDERSTAND, AND AGREE THAT ANY MOTORIZED WATERSPORT ACTIVITIES ("THE ACTIVITIES") ARE OFFERED BY VENDORS WHO ARE INDEPENDENT OF, AND NOT AFFILIATED WITH THE ATLANTIS RESORT & CASINO, HARBORSIDE RESORT OR OCEAN CLUB ("RESORT")."** (Pyfrom Aff. ¶ 12 & Ex. C.)

the document the guest was asked to sign contained a forum selection clause or that there was a release of liability to the hotel. (Pyfrom Dep. 11:11–20.) As explained by Pyfrom, the desk clerk would "present[ ] the form from the desk and ask[ ] [the guest] to read it and ask[ ] [the guest] to sign it and address[ ] any questions," and would "be[ ] open to address any questions that the guest might have." (Pyfrom Dep. 11:16–20.) As far as Pyfrom is aware, at the time Horberg signed the guest registration cards, Atlantis did not have a policy of sending a copy of the Acknowledgment, Agreement, and Release to individuals who had made reservations prior to their arrival at the Atlantis. (Pyfrom Dep. 11:21–12:6.) Further, to Pyfrom's knowledge, at the time Horberg signed the guest registration cards, Atlantis did not have a policy of having its travel agents, upon securing a reservation, provide a copy of the Acknowledgment, Agreement and Release to the guest. (Pyfrom Dep. 12:7–12.)

Defendants move to dismiss this action based on a forum selection clause contained in the two guest registration cards Plaintiff signed when checking into the Atlantis Hotel on March 24, 2005. In the alternative, Defendants move to dismiss the action based on the doctrine of *forum non conveniens.*

## *ANALYSIS*

### I. *Forum Selection Clause*

■ A motion to dismiss based on a forum selection clause is brought pursuant to Federal Rule of Civil Procedure 12(b)(3). *See Lipcon v. Underwriters at Lloyd's London,* 148 F.3d 1285, 1290 (11th Cir.1998). When making a determination on a Rule 12(b)(3) motion, the court "may consider matters outside the pleadings, and often must do so, since without the aid of such outside materials, the court would be unable to discern the actual basis, in fact, of a party's challenge to the bare

allegation in the complaint that venue is proper to that court." *Ward v. Kerzner Int'l Hotels,* No. 03–23087–CIV–JORDAN, 2005 WL 2456191, *2 (S.D.Fla.2005) (citing *Webster v. Royal Caribbean Cruises, Ltd.,* 124 F.Supp.2d 1317, 1320 (S.D.Fla.2000) (citing *Transmirra Prods. Corp. v. Fourco Glass Co.,* 246 F.2d 538, 538–39 (2d Cir. 1957))).

■ Forum selection clauses are "prima facie valid," and should be specifically enforced unless the party against whom the clause is sought to be enforced can "clearly show that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 9–10, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). The determination is made on a case-by-case basis. *Sun Trust Bank v. Sun Int'l Hotels Ltd.,* 184 F.Supp.2d 1246, 1258 (S.D.Fla.2001).

■ In *Sun Trust Bank,* under factual circumstances similar to those at issue in this action, Judge Huck found that a forum selection clause appearing on the back of a guest registration form presented to the guest for signature upon check-in was unenforceable. *Id.* at 1261. The *Sun Trust Bank* court concluded that "while Atlantis guests may be afforded sufficient opportunity to read the forum selection clause, they have no objectively reasonable opportunity to consider and reject it." *Id.* Here, as in *Sun Trust Bank,* the evidence demonstrates that Horberg was not told when he made his reservation that he would be required to sign the forum selection clause, and there is no evidence in the record indicating that when the forum selection clause was presented to Horberg upon check-in on March 24, 2005, the significance of signing the clause was explained

to him, or that he was afforded sufficient opportunity to consider and reject the forum selection clause. *See also Foster v. Sun Int'l Hotels, Ltd., et al.,* No. 01–1290–CIV–KING, 2002 WL 34576251 (S.D.Fla., Feb. 4, 2002).

However, Defendants argue that in contrast to the Atlantis guests in *Sun Trust Bank,* Plaintiffs in this action were afforded sufficient opportunity to read the forum selection clause because Plaintiffs visited the Atlantis on at least four prior occasions, and were presented with and signed guest registration cards containing the forum selection clause on each of those visits. (Pyfrom Aff. ¶¶ 4–6, Exs. A & B.) The Court finds Defendants' argument to be persuasive. Defendants have demonstrated that Plaintiffs, on multiple occasions, were presented with and signed a guest registration form containing the relevant forum selection clause. In contrast to the *Sun Trust Bank* plaintiffs, the evidence in the record demonstrates that Plaintiffs in this case had a reasonable opportunity to consider and reject the forum selection clause contained in the guest registration card because Plaintiffs were not presented with the forum selection for the first time upon check-in on March 24, 2005.

The Court's determination as to a forum selection clause's enforceability is made on a case-by-case basis. *See, Carnival Cruise Lines,* at 595, 111 S.Ct. 1522; *Shankles v. Costa Armatori, S.P.A.,* 722 F.2d 861, 864 (1st Cir.1983). If Horberg had been presented with the guest registration card for the first time on March 24, 2005, the Court might reach a different conclusion. However, Horberg had been presented with, and signed, the guest registration card at issue on multiple occasions. Consequently, under the facts of this case, the Court finds the forum selection clause Horberg signed on March 24, 2005, to be enforceable. The case therefore should be dismissed on these grounds alone; however,

even assuming that the forum selection clause is unenforceable under the facts of this case, the Court finds, for the following reasons, that the action should be dismissed on grounds of *forum non conveniens.*

## II. *Forum Non Conveniens*

▉ Under the doctrine of *forum non conveniens,* a district court has the inherent power to decline to exercise jurisdiction even when venue is proper. *See Gulf Oil v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The "central focus of the *forum non conveniens* inquiry is convenience." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). To obtain dismissal under the doctrine, "the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private interest factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1310–11 (11th Cir.2001).

▉ With respect to the second element of the analysis, there is "ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co.,* 454 U.S. at 255, 102 S.Ct. 252. However, a United States plaintiff's choice of forum may be afforded less deference where the plaintiff is suing outside of his or her home forum. *Iragorri v. United Techs., Corp.,* 274 F.3d 65, 73 (2d Cir.2001) (explaining that the court gives greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons, including the plaintiff's convenience, and diminishing deference to a plaintiff's forum choice to the extent that it

was motivated by tactical advantage); *Gemini Capital Group, Inc. v. Yap Fishing Corp.,* 150 F.3d 1088, 1091 (9th Cir. 1998) (according the plaintiffs' choice of forum less deference where none of the plaintiffs were residents of the forum in which they were suing); *see also Foster v. Sun Int'l Hotels, Ltd.,* No. 01–1290–CIV–KING, 2002 WL 34576251 (S.D.Fla., Feb. 4, 2002) ("Though there is ordinarily a strong presumption in favor of the plaintiff's chosen forum, that presumption applies with less force when the plaintiff has chosen to sue in a forum in which he does not reside."); *Morrone v. Sun Int'l Hotels, Ltd.,* No. 05–61600–CIV–SEITZ (S.D.Fla., Sep. 22, 2006) ("That presumption of convenience is diminished somewhat, however, when a plaintiff chooses to sue in a forum in which he does not reside .... [and the fact] that a domestic plaintiff files suit somewhere in the U.S. does not automatically preclude dismissal in favor of a foreign forum, so long as the reviewing court is convinced that there are extreme circumstances in which manifest injustice would result from retaining the case in the plaintiff's chosen forum.") (citing *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1101–02 (11th Cir.2004)).[4]

The Court must "consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing the plaintiff's initial forum choice." *Ward,* 2005 WL 2456191, at *1 (citing *La Seguridad v. Transytur Line,* 707 F.2d 1304, 1307 (11th Cir.1983)). Where the Court "finds this balance of private interests to be in equipoise or near equipoise, it must then determine whether or not factors of public interest tip the

balance in favor of a trial in a foreign form." *Id.* (citing *La Seguridad,* 707 F.2d at 1307). " '[P]rivate factors are generally considered more important' than public ones," however, "courts should consider both public and private factors 'in all cases.' " *Id.* (quoting *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir.2001)). The Eleventh Circuit requires the defendant to present "positive evidence of unusually extreme circumstances and thoroughly convince [the court] that material injustice is manifest before ousting a domestic plaintiff from this country's courts." *Id.* (quoting *SME Racks,* 382 F.3d at 1101–02).

### 1. Availability of Adequate Alternative Forum

The defendant has the initial burden of establishing that an adequate alternative forum exists with jurisdiction over the entire case. *La Seguridad,* 707 F.2d at 1307. "Ordinarily, [the availability] requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction." *Piper Aircraft,* 454 U.S. at 255 n. 22, 102 S.Ct. 252 (quoting *Gilbert,* 330 U.S. at 506–07, 67 S.Ct. 839). Defendants are Bahamian corporations headquartered in Paradise Island, in The Bahamas. (Pyfrom Aff. ¶ 3.) It is undisputed that Defendants are amenable to process in The Bahamas. Moreover, Plaintiffs concede that Defendants "have shown that The Bahamas is an adequate forum." (Pls.' Opp'n to Defs.' Mot. to Dismiss ("Resp.") at 5.) *See also Chierchia v. Treasure Cay Servs.,* 738 F.Supp. 1386, 1388 (S.D.Fla.1990); *Morse v. Sun Int'l Bahamas, Ltd.,* No. 98–7451–CIV–JORDAN, 2001 WL 34874967, at *2 (S.D.Fla.

---

4. However, the Court also notes that in *Ward v. Kerzner,* Judge Jordan declined to afford a Georgia plaintiff less deference where the Georgia plaintiff brought his case against Kerzner in Florida courts because in *Ward* it

appeared that there was no other domestic jurisdiction than Florida where venue would be proper and there was no other evidence of forum shopping. *Ward,* 2005 WL 2456191, at *2 n. 3.

Feb. 26, 2001), *aff'd* 277 F.3d 1379 (11th Cir.2001); *Morrone,* No. 05–61600–CIV–SEITZ. Accordingly, this Court has no reason to find other than that The Bahamas provides Plaintiffs with an adequate alternative forum, and the Court must weigh the private and public interest factors to determine whether the action should be dismissed. *Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. 252.

## 2. *Private Interest Factors*

■■■ The private interest factors that the Court must consider include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. 252 (quoting *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839). The accident giving rise to this action occurred in The Bahamas. Defendants argue that "all of the documents related to Plaintiffs' allegations in the Complaint are in The Bahamas and the overwhelming majority of the relevant witnesses reside in The Bahamas, many of whom are not employed by Defendants or their affiliates and cannot be compelled to testify here in Florida." (Pyfrom Aff. ¶¶ 9–11.)

Plaintiffs argue the Court "should look to the quality of the proposed witnesses rather than their number," and Plaintiffs further argue that the location of witnesses under Defendants' control is irrelevant to the *forum non conveniens* analysis. (Resp. at 9–10.) *See Morse,* 2001 WL 34874967, at *3 (acknowledging that courts should look to the quality of the proposed witnesses rather than their number); *Ward,* 2005 WL 2456191, at *3. Plaintiffs further argue that where "the moving party has merely made a general allegation

that certain witnesses are necessary, without identifying them or the substance of their testimony, the motion must be denied." (Resp. at 9–10.) *See J.I. Kislak Mortgage Corp. v. Connecticut Bank & Trust Co.,* 604 F.Supp. 346, 348 (S.D.Fla. 1985).

Defendants have identified the following witnesses who are located in The Bahamas and are currently employed by Defendants or their affiliates: (1) Security Investigator Jacob Shaw, who filed a report concerning the alleged accident; (2) Nurse Moneur, who cared for Horberg immediately after the alleged accident and also filed a report of the incident; (3) Guest Services Agent Carnetta Carew, who accompanied Horberg to Doctors Hospital in The Bahamas following the alleged accident; and (4) Hotel Assistant Manager Tanya Dames, who also accompanied Horberg to Doctors Hospital in The Bahamas following the alleged accident. (Pyfrom Aff. ¶ 9.)

More importantly, Defendants also have identified the following witnesses who are located in The Bahamas and are not employed by Defendants or their affiliates: (1) Dr. Bullard, a physician from Doctors Hospital who treated Horberg shortly after the alleged accident; (2) former Atlantis Water Features Supervisor, Bianca Zieim, who first learned of Horberg's alleged accident and who reported such accident to Atlantis security; (3) unidentified physicians and nurses at Doctors Hospital who examined and/or treated Horberg upon his arrival at Doctors Hospital; (4) Captain Allens of the Paradise Island Port Authority, who was involved in the investigation of the alleged accident; and (5) unidentified officers of the Paradise Island Police Force, who were also involved in the investigation of the alleged accident. (Pyfrom Aff. ¶ 10.) The fact that many key witnesses, not within the Court's compulsory process, are located in The Bahamas

is a private interest factor weighing in favor of dismissal.[5] *See Morse*, 2001 WL 34874967, at \*3; *Morrone*, No. 05–61600–CIV–SEITZ. The Supreme Court in *Gilbert* explained that "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gilbert*, 330 U.S. at 511, 67 S.Ct. 839. As Defendants point out, if this case were to proceed in Florida, Defendants' case would consist mostly of deposition testimony. (Defs.' Mot. to Dismiss at 14.)

Nonetheless, Plaintiffs argue that the private interest factors weigh in favor of this forum because the "main eyewitnesses, the Plaintiff and Plaintiff's son, live in the United States," and "[i]t appears that these defendants have at least identified another U.S. witness as shown by the subpoena attached as Exhibit J." (Resp. at 11 & Ex. J.) Plaintiffs assert that Horberg's "primary medical treatment was in Miami and Illinois, and would involve witnesses located in Florida and Illinois." (Resp. at 11.) Plaintiffs further assert that the "non-employee Bahamian witnesses have not been shown to require live testimony" (Resp. at 11.), whereas, according to Plaintiffs, "the availability of the non-Bahamian witnesses [in the United States] forecloses any demonstration that the evidence and witnesses predominate in The Bahamas." (Resp. at 11.)

The Court simply is not persuaded by Plaintiff's arguments regarding the accessability of witnesses. Plaintiffs have not specifically identified any key witness located in Florida. Even the Horbergs and

their son are not located in Florida. Although Horberg received medical treatment in Miami and Illinois, the initial treating physician is located in The Bahamas and Horberg's post-surgery rehabilitation has been in Illinois. The testimony of physicians who treated Horberg in Miami and Illinois are relevant to Horberg's surgical procedure and related hospitalization in Miami and his rehabilitation in Illinois and, therefore, relevant only to the issue of damages. *See Morse*, 2001 WL 34874967, at \*3 (citing *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 17 (1st Cir. 2000); *Perusahaan Umum Listrik Negara Pusat v. M/V Tel Aviv*, 711 F.2d 1231, 1240 n. 26 (5th Cir.1983)). While the Court appreciates Plaintiffs desire to present their damages testimony here, first they must establish liability and virtually all of the liability witnesses, especially important third party witnesses, and some of the more important damages witnesses are located in the Bahamas. Also, while there may be some inconvenience to the few Miami witnesses in traveling to the Bahamas, given that all of the other domestic witnesses are located in Illinois, Plaintiffs cannot seriously contend that they will be more inconvenienced by having to travel to the Bahamas instead of Miami. *See Morse*, 2001 WL 34874967, at \*3, (citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir.2000); *Chierchia v. Treasure Cay Servs.*, 738 F.Supp. 1386, 1388 (S.D.Fla.1990)); *Morrone*, No. 05–61600–CIV–SEITZ.

Plaintiffs also argue that Defendants have "failed to identify any documentary or physical evidence that could not be obtained if the trial were conducted here." (Resp. at 10.) *See Morse*, 2001 WL

---

**5.** The Court finds that contrary to Plaintiffs' characterization, Defendants' identification of witnesses who are located in The Bahamas and are not employed by Defendants or their affiliates does not constitute a mere "general allegation that these witnesses are necessary, without identifying them or the substance of their testimony." Rather, the Court finds that Defendants have sufficiently explained each potential witnesses's connection to the accident giving rise to this action.

34874967, at *3; *Doe v. Sun Int'l Hotels, Ltd.*, 20 F.Supp.2d 1328, 1330 (S.D.Fla. 1998). However, with respect to documentary evidence, Defendants assert that "Plaintiffs' accident file containing security reports and incident reports, the medical records from the Bahamian hospital, and all of the Atlantis's records regarding the maintenance and condition of the area in question are located in The Bahamas" (Reply at 8.), and they have supported that assertion with Pyfrom's testimony. Pyfrom Aff.¶ 11. The Plaintiffs have not controverted these assertions except to complain that these items of documentary evidence have not been gathered yet. However, regardless of whether the documentary evidence are located in the Bahamas has been compiled by now, the uncontroverted fact remains that the most of the important documentary evidence (including the accident report, report of investigation, witness statements, records of the initial medical treatment, records of property ownership and business records) is located in the Bahamas, while all that is located in the United States are some of the medical records.

Defendants further rely on the fact that viewing the site of the accident will be relevant. (Reply at 8.) *See Morse*, 2001 WL 34874967, at *4. *But see Ward*, 2005 WL 2456191, at *4. Plaintiffs dispute this contention arguing that Defendants have not "alleged or established that there is anything unusual about the physical layout of the site that cannot be adequately and accurately depicted in photographs and diagrams." (Resp. at 13.) Plaintiffs site

*Sun Trust Bank*, 184 F.Supp.2d at 1264, in support of their assertion that Defendants have not sufficiently shown that viewing the physical location of the accident will be relevant. However, as Defendants point out, this action is distinguishable from *Sun Trust Bank* as liability was uncontested in *Sun Trust Bank*, whereas here, Defendants dispute liability. *See Sun Trust Bank*, 184 F.Supp.2d at 1264 (explaining that "the cause of [ ] death [did] not even appear to be in dispute," because the child had been violently sucked into a drain pipe on the defendants' premises, and that "given [these circumstances], there [did] not seem to be much need for a jury (which there likely [would] not be if the action [was] tried in The Bahamas) to view the general lagoon area and facilities" where the drain pipe was located).[6] The Court finds, based on the allegations in the complaint as well as other information in the record, that a view of the scene of the accident likely would be useful to the trier of fact and superior to the exclusive use of photographs, diagrams and schematics advocated by the Defendants.

An additional private interest factor for the Court to consider is the ability to implead other entities. *See Morse*, 2001 WL 34874967, at *4 (citing *Piper Aircraft*, 454 U.S. at 259–60, 102 S.Ct. 252); *Morrone*, No. 05–61600–CIV–SEITZ. Defendants argue that this factor is significant in this action, because "neither Defendants nor any business owned, operated and/or controlled by Defendants or their affiliates rented the jet ski at issue to Mr. Horberg."[7] (Mot. to Dismiss at 14; Pyfrom

---

**6.** The Court also notes that in contrast to *Ward,* where the court found that the defendant had "neither alleged nor established that there [was] anything unusual about the physical layout of the site that [could not] be adequately and accurately depicted in photographs, diagrams, and videotapes," this Court is convinced that a view of the accident scene

is important to the liability issue in this action. *See Ward,* 2005 WL 2456191, at *4.

**7.** Defendants have provided the Court with a copy of the guest registration card Horberg signed upon arrival at the Atlantis, which states: **"I UNDERSTAND, AND AGREE THAT ANY MOTORIZED WATERSPORT ACTIVITIES ("THE ACTIVITIES") ARE**

Aff. ¶ 12 & Ex. C.) Defendants argue that they will not be able to implead this yet-to-be identified, presumably Bahamian entity if the suit is tried in Florida, because it is unlikely that entity will be subject to this Court's jurisdiction. (Mot. to Dismiss at 14; Pyfrom Aff. ¶ 12.) This action involves the alleged direct negligence of this yet-to-be identified, presumably Bahamian entity, and the inability to implead this party, once identified, weighs in favor of dismissal under the doctrine of *forum non conveniens. See Morse,* 2001 WL 34874967, at *4 (finding that inability to implead a Bahamian watersports vendor weighed in favor of dismissing a negligence suit against the Atlantis Hotels, explaining that if the Atlantis could demonstrate that a watersport accident-caused when an Atlantis Hotel guest riding on a "banana boat" was struck by a jet ski-occurred solely as a result of the negligence of the watersports vendors, then they could be relieved of liability).

As in *Morse,* in this action, "litigating all claims in The Bahamas avoids a scenario in which [Defendants] would pursue their cross-claims against [the independent watersports vendor] in The Bahamas while defending the action against [Plaintiffs] in the United States, without compulsory process to obtain key witnesses." *Morse,* 2001 WL 34874967, at *4. As the *Morse* court explained, even though Defendants, if found liable in this Court, may seek contribution from the independent watersports vendor in The Bahamas, "such an approach runs the risk of inconsistent verdicts." *Morse,* 2001 WL 34874967, at *4 (citing *Piper Aircraft Co.,* 454 U.S. at 243, 102 S.Ct. 252). "Because judicial economy favors resolution of all claims in one trial, [Plaintiffs'] chosen forum would be unduly burdensome and dismissal is warranted."

*Morse,* 2001 WL 34874967, at *4 (citing *Piper Aircraft Co.,* 454 U.S. at 259, 102 S.Ct. 252; *Iragorri,* 203 F.3d at 15; *Fitzgerald v. Texaco,* 521 F.2d 448, 453 (2d Cir.1975); *Kristoff v. Otis Elevator Co.,* 1997 WL 67797, at *3 (E.D.Pa. Feb. 14, 1997); *Kilvert v. Tambrands, Inc.,* 906 F.Supp. 790, 796 (S.D.N.Y.1995); *Am. Home Assurance Co. v. Ins. Corp. of Ireland,* 603 F.Supp. 636, 641 n. 5 (S.D.N.Y. 1984)). The Court also notes that in *Ward,* Judge Jordan specifically explained that a "key difference" between *Morse* and *Ward* was "the ability to implead necessary third parties." *See Ward,* 2005 WL 2456191, at *3 n. 4 (explaining that "[s]ince *Morse* was decided, the Eleventh Circuit has made clear that the defendant must set forth 'positive evidence of unusually extreme circumstances' to overcome the strong presumption in favor of a domestic plaintiff's chose forum") (citing *SME Racks,* 382 F.3d at 1103).

 Finally, Plaintiffs argue that "even if [Horberg] could make a trip to The Bahamas, he would face significant impediments," for example, Plaintiffs argue that the "unavailability of contingency fees or a jury trial in The Bahamas may not make the alternative forum inadequate, but it is relevant in the private-interest balance." (Resp. at 12.) *See Macedo v. Boeing Co.,* 693 F.2d 683, 690 (7th Cir.1982); *Doe,* 20 F.Supp.2d at 1330 ("In The Bahamas, the plaintiff would not be entitled to a jury trial and she would be unable to obtain a lawyer on a contingency fee basis. It is undisputed that the eighteen-year-old plaintiff does not have the financial ability to bring a lawsuit in The Bahamas. Thus, for all practical purposes, the plaintiff would be unable to maintain a lawsuit in The Bahamas."). While the

---

**OFFERED BY VENDORS WHO ARE INDEPENDENT OF, AND NOT AFFILIATED WITH THE ATLANTIS RESORT & CASI-** **NO, HARBORSIDE RESORT OR OCEAN CLUB ("RESORT")."** (Pyfrom Aff. ¶ 12 & Ex. C.)

Court recognizes that the absence of a contingency fee system is a private interest factor that may be taken into consideration in determining whether an action should be dismissed on grounds of *forum non conveniens,* the Eleventh Circuit has determined that "the lack of a contingent fee system and the lack of a trial by jury are not entitled to substantial weight." *See Morse,* 2001 WL 34874967, at *5 (citing *Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1430 (11th Cir.1996)). Thus, even taking into consideration the unavailability of contingency fees or a jury trial in The Bahamas, the Court finds that in this action, this factor does not weigh heavily against dismissal on grounds of *forum non conveniens.*

In sum, after carefully considering the arguments of both parties, the Court finds that the private interest factors weigh heavily in favor of dismissal. The Court finds that if the claims are brought in The Bahamas, the parties will have greater access to all important witnesses and documents necessary to present their case. On the other hand, if the action remains in this Court, Plaintiffs will be deprived of key witness testimony and the ability to implead independent third-party watersports vendor. Therefore, taking into consideration all private interest factors, the Court finds that dismissal of this action under the doctrine of *forum non conveniens* is warranted.

### 3. *Public Interest Factors*

■ The public interest factors to be considered include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. 252 (quoting *Gilbert,* 330 U.S. at 509, 67 S.Ct. 839). The Court has already determined that the private interest factors weigh heavily in support of dismissal, and, even if they did not, the Court finds that the public interest factors also weigh heavily in favor of dismissal.

The Court recognizes that the first factor, "administrative difficulties flowing from court congestion," has "been properly accorded little or no weight or analysis." *Morse,* 2001 WL 34874967, at *7; *Sun Trust Bank,* 184 F.Supp.2d at 1266. However, even according this factor little or no weight or analysis, the public interest factors still weigh heavily in favor of dismissal.

To begin with, this is an action in negligence brought by two citizens of Illinois against two Bahamian entities, arising out of an accident that allegedly occurred in The Bahamas. The dispute has little or no relation to Florida, and Florida has little or no interest in adjudicating claims under Bahamian law arising out of an incident that occurred in Bahamian waters under circumstances where Plaintiffs voluntarily traveled to The Bahamas. Compelling local jurors to sit on a trial to resolve this case that has no connection to this community would impose an unfair burden. *See Chierchia v. Treasure Cay Servs.,* 738 F.Supp. at 1388; *Proyectos Orchimex de Costa Rica v. E.I. duPont de Nemours & Co.,* 896 F.Supp. 1197, 1203 (M.D.Fla.1995) ("The burden of imposing jury duty on citizens to decide a case with no connection to the forum is a significant factor in performing a *forum non conveniens* analysis. In these cases, the jury duty burden weighs heavily in favor of dismissal.").

Further, the Court finds, for obvious reasons, that The Bahamas has a much stronger local interest in deciding this ac-

tion. Defendants are Bahamian entities, and the alleged accident occurred off the waters of The Bahamas. The case involves a prominent Bahamian resort, and tourism is the largest industry in The Bahamas. The Bahamas has a vital interest in regulating the standards of conduct of the Bahamian Defendants. *See Foster v. Sun Int'l Hotels, Ltd.*, No. 01–1290–CIV–KING, 2002 WL 34576251 (S.D.Fla., Feb. 4, 2002); *Kawasaki Motors Corp. v. Foster*, 899 So.2d 408, 412 (Fla. 3d DCA 2005).

The Court recognizes that the United States does have an interest in "providing its own citizens with a forum to seek redress for injuries caused by foreign defendants." *Ward*, 2005 WL 2456191, at *5 (finding "The Bahamas interest [was] somewhat lessened where the sole plaintiff is an American citizen") (citing *Sun Trust Bank*, 184 F.Supp.2d at 1266; *SME Racks*, 382 F.3d at 1104). However, under the circumstances of this case, especially taking into consideration the fact that Plaintiffs traveled voluntarily to The Bahamas on multiple occasions, the interest of The Bahamas outweighs that of the United States. Plaintiffs also argue that both Defendants have a substantial presence in Florida, and that much or "almost all" of Horberg's medical treatment took place in Florida and Illinois.

The Court recognizes that in *Ward*, Judge Jordan found that the United States had an interest in litigation involving the Kerzner defendants because they have conducted business in the United States through their South Florida offices. *Ward*, 2005 WL 2456191, at *5 (citing *SME Racks*, 382 F.3d at 1104). However, the crux of this action is Defendants' alleged negligence in failing to properly supervise and monitor the use of jet skis by their guests off the waters of the Atlantis, in The Bahamas. This Court finds that while Defendants may maintain offices or otherwise have a presence in Florida, that

presence is not of great relevance to this lawsuit. Moreover, the Court finds it significant that Horberg's medical treatment in Florida and Illinois is more relevant to the issue of damages than liability. Thus, despite the *Ward* court's contrary conclusion, this Court finds that these public interest factors do not tip the scales in favor of trying the case in the Southern District of Florida.

The final relevant public interest factor, an important factor, is the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law. Bahamian law will undisputably apply in this action, and the Court finds that this factor weighs in favor of dismissal. *See Morse*, 2001 WL 34874967, at *7 (citing *Piper Aircraft Co.*, 454 U.S. at 260 n. 9, 102 S.Ct. 252); *Morrone*, No. 05–61600–CIV–SEITZ. *But see Ward*, 2005 WL 2456191, at *5 (finding no "conflict or difficulty" associated with applying Bahamian law). Plaintiffs argue that this factor does not weigh in favor of dismissal because there is not a significant difference between Florida law and Bahamian law. *See Ward*, 2005 WL 2456191, at *5. Nonetheless, the Court still finds that the application of Bahamian law weighs in favor of dismissal. *See Morse*, 2001 WL 34874967, at *7; *see also Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1519 (11th Cir.1985).

### 4. *Reinstatement of Suit*

Finally, after determining that the balance of conveniences weighs in favor of The Bahamas, the Court must ensure that Plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice. *Leon*, 251 F.3d at 1310–11. Here, as Defendants point out, Plaintiffs have chosen a forum that is more than 1000 miles from their residence. The Court agrees that it would be no more inconvenient for Plaintiffs and their wit-

nesses to travel to The Bahamas than it would be to travel to Florida. *See Chierchia,* 738 F.Supp. at 1388. Plaintiffs will not be unduly inconvenienced, nor will they be unduly prejudiced, as Defendants are both subject to the jurisdiction of Bahamian courts and the statute of limitations over this action has not run. The Court also notes that Defendants agree to waive any statute of limitations defense. (Mot. to Dismiss at 17 n. 12.) Therefore, the Court dismisses this action subject to Defendants' representations. Specifically, Defendants are deemed to have waived any statute of limitations defenses they might otherwise raise in accordance with the representations they have made to the Court. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss is GRANTED.